THE STATE OF KANSAS V. HIRAM M. SHAW.

No. 16,125.    (100 Pac. 78.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—Arson—Ownership—Property "of Another."
Under the laws of this state the legal identity of husband and
wife does not prevent a husband who burns his wife's house
from being guilty of arson.

2. ———— Instructions—Intent.  Where, on the trial of a crim-
inal charge, the court presents in its instructions to the jury
the principal questions involved, the defendant can not predi-
cate error upon an omission to give a special instruction
which was not requested.

3. ———— New Trial—Misconduct of Jury.  It is not error to
refuse an application for a new trial unless such refusal is
in some way prejudicial to the substantial rights of the ap-
plicant.

Error from Trego district court; JACOB C. RUPPEN-
THAL, judge.   Opinion filed January 12, 1909.   Af-
firmed.

Fred S. Jackson, attorney-general, Herman Long,
county attorney, and John Marshall, for The State.

John A. Nelson, Lee Monroe, and George A. Kline,
for appellant.

The opinion of the court was delivered by

GRAVES, J.: The appellant was convicted of arson
in the third degree, on March 20, 1908, in the district
court of Trego county, and has brought the case here
on appeal.   There are several assignments of error,
but they may all be considered as one.

The appellant relies upon the proposition that the
crime of arson is not established by the evidence, but,
on the contrary, claims that a state of facts is shown
from which it appears that such offense could not have
been committed by him.   The evidence shows that the
appellant and Cora J. Shaw, the alleged owner of the

The State v. Shaw.

property burned, were husband and wife at the time the crime charged was committed. It is argued that a husband can not be guilty of arson by burning the house of his wife, and that this arises from the legal identity of husband and wife. At common law the crime of arson was defined to be the wilful and malicious burning of the dwelling-house of another. (Harris's Crim. Law, p. 225.)

The crime charged against the appellant, and of which he was convicted, is defined by section 55 of the crimes act, being section 2046 of the General Statutes of 1901, which reads:

"Every person who shall wilfully set fire to or burn, in the night-time, any house, building, barn, stable, boat or vessel of another, or any house of public worship, college, academy or schoolhouse, or building used as such, or any public building belonging to the United States or this state, or to any county, city, town or village, not the subject of arson in the first or second degree, shall on conviction be adjudged guilty of arson in the third degree."

It is insisted that the words "of another," as used in the statute, should be held to have the same signification that has been given to them as used in the common-law definition of the crime of arson. Numerous authorities are cited to support the view that as husband and wife are one they can not be properly separated from each other by designating either as "another," and, therefore, that word can not be applied to either husband or wife where one burns the house of the other. Many cases hold to this view, but we do not think it can be made to harmonize with the long-established policies of this state, as shown by its laws and the former decisions of this court. In the first place there are no common-law offenses in this state; they are all statutory. (*The State v. Young,* 55 Kan. 349, 40 Pac. 659.) The crime of arson is fully defined by statute, and the language used indicates quite clearly

that it was not intended by the enactment of this statute merely to adopt the common-law definition of that offense. The two differ materially. It is true that the words "the house of another" are used in the statute, but the reason given for holding that the wife is not "another" as distinguished from the husband has very little force in this state. The common-law idea that "husband and wife are one, and that one the husband," was extinguished in this state when the constitution was adopted. Section 6 of article 15 of the constitution reads:

"The legislature shall provide for the protection of the rights of women, in acquiring and possessing property, real, personal and mixed, separate and apart from the husband; and shall also provide for their equal rights in the possession of their children."

Section 9 of the same article prohibits the alienation of the homestead "without the joint consent of husband and wife."

The policy of permitting husband and wife to own property and transact business independent of each other has been expanded by legislation until the property rights of married people are as separate and distinct from each other as if they were unmarried. They transact business with each other as freely as with other people. Among the many decisions of this court upholding this policy, the following may be cited: *Going v. Orns,* 8 Kan. 85; *Monroe v. May, Weil & Co.,* 9 Kan. 466; *McCarty, Adm'r, v. Quinby,* 12 Kan. 494; *Parker v. Bates,* 29 Kan. 597; *Chapman v. Summerfield,* 36 Kan. 610, 14 Pac. 235; *Shinn v. Shinn,* 42 Kan. 1, 8, 21 Pac. 813, 4 L. R. A. 224; *Harrington v. Lowe,* 73 Kan. 1, 84 Pac. 570, 4 L. R. A., n. s., 547; *Nagle v. Tieperman,* 74 Kan. 32, 85 Pac. 941, 88 Pac. 969. In view of this condition of the law in this state it does not seem reasonable to say that a house conveyed by a husband to his wife is not owned by a person other than the husband. Such a rule may be proper in a state

The State v. Shaw.

where the relation of husband and wife is the same as at the common law, but it can have no application here.

It is further urged that the appellant, in good faith, believed that notwithstanding the warranty deed by which he conveyed the property to his wife he was still the owner thereof, and therefore an intent to burn her property could not have existed in his mind, and that without this essential element the crime charged could not have been committed, if he did burn the house. It is claimed that the court erred in not submitting this question of intent to the jury. The abstract does not show any direct evidence upon this subject. The appellant when on the witness-stand did not so testify; he merely stated that his understanding was that the property could not be conveyed without his signature. His wife said that several times after the conveyance he asserted to her that the deed was not good. The question of intent, as here presented, does not seem to have been considered at the trial. The appellant did not request any special instruction upon this question, or even orally ask the court to present it to the jury in the general charge. The question of ownership was fairly presented to the jury. They were told that before the appellant could be convicted it must appear beyond a reasonable doubt that the wife was the owner of the property burned. It was further stated that if the husband conveyed the property to the wife, in consideration of a conveyance by her to him of other property, which he wanted to sell, then she would be the owner of the property so conveyed to her. This fully covered the controversy most prominently presented by the testimony. If any other phase of the question was involved in the evidence it was so obscure that a trial court might have easily overlooked it, unless specially called to its attention. In the absence of a request, oral or otherwise, to present the question of intent to the jury, we are unable to say that the omission to do so was material error.

The State v. Shaw.

Complaint is made of an instruction the closing paragraph of which reads: "The intoxication of a person, voluntarily produced by liquor, furnishes no excuse for any crime committed while under its influence." What the preceding portion of the instruction was the abstract does not show. It is claimed that this was erroneous, there being no evidence showing that the appellant was intoxicated, and therefore the instruction had the effect of suggesting drunkenness, which would be prejudicial to the appellant. There was evidence that the appellant was intoxicated when he threatened to burn the house, which was several days before the fire. He had a quart bottle in his pocket the evening before. He got a drink of "Mexican Hot" at a restaurant the morning before the fire. He acted at times like a man who, though not drunk, was ill-tempered and reckless, as some intoxicated people are. There was enough in the evidence to suggest intoxication to the jury. It was not error, therefore, to limit the effect of such a suggestion by the instruction given.

It is claimed that a juror was guilty of misconduct sufficient to invalidate the verdict. While in the jury-room he stated that he had removed a trunk from the house for the appellant about two weeks before the fire. The statement was made to a fellow juror, in a side talk, but was not discussed nor considered as a part of the evidence. The testimony of such of the jurors as were examined on the hearing of the motion for a new trial shows quite clearly that the rights of the appellant were not prejudiced, and the court properly denied the motion.

The judgment is affirmed.